# Tioga County *versus* South Creek Township.

1. A female was married ; the husband immediately abandoned her, and a child was born shortly after the marriage. *Held*, that she was not a competent witness to prove that her husband was not the father of the child.

2. The presumption is, that issue born in wedlock, although begotten before, is legitimate.

3. Husband or wife cannot prove non-access for the purpose of bastardizing the issue.

4. The " policy of the law," which the Act of April 15th 1869 declares shall not exclude a witness, does not include the public policy which prevents husband or wife from proving non-access.

[Tioga County *v.* South Creek Township.]

March 12th 1874.   Before AGNEW, C. J., SHARSWOOD, MERCUR and GORDON, JJ.   WILLIAMS, J., at Nisi Prius.

Error to the Court of Quarter Sessions of *Bradford county :* No. 299, to January Term 1874.

This was an appeal in the court below, from an order made in June 1873, by two justices of the peace of the county of Bradford, for the removal of Francis Hoagland, a pauper, from the poor district of South Creek, Bradford county, to Tioga county.   The appeal was filed September 3d 1873.

Another similar order of removal had been made by two justices of the peace of Bradford county on the 16th of December 1871, under which the pauper was taken to Tioga county ; this order was not appealed from ; the pauper was afterwards sent back to South Creek, and subsequently the order of June 1873 was obtained.

On the hearing of the appeal, the appellee gave evidence that the pauper's mother, whose name was Mary Ann Lyons, was married to Amos Hoagland in 1847, and the pauper was born about three months after the marriage.   Amos Hoagland never had a settlement in Bradford county, but had a settlement in Tioga county ; he remained with her the night of the marriage, he then left her and had never afterwards lived with her.   The child was born in Bradford county, at the house of the person by whom the mother was employed ; shortly after his birth the mother left that house, and when the child was about a year old he was brought back to the same house, where he lived until he was twenty-one years old, and went by the name of the mother's employer ; when he attained full age he left that house and went to live with his mother, who had moved to South Creek township ; the child always called the mother's employer and his wife, father and mother.

For the appellant, the mother under objection and exception testified that her employer was the father of the pauper and not her husband ; that there had been no intercourse between herself and her husband until some time after the child had been begotten.

The appellant also gave evidence for the purpose of showing duress in procuring the marriage, by the employer of the mother, a constable and the justice of the peace.   The mother was afterwards divorced and married again.

The court below delivered the following opinion :—

* * * "It is claimed in behalf of the defendant that Francis, the pauper, is not the child of Amos Hoagland.   They say first that the alleged marriage between Hoagland and Mary Ann Lyons was procured by duress and was therefore void.

" The evidence upon this point is somewhat conflicting, but if we throw out of the case the evidence of Amos Hoagland and Mary Ann Ketcham, formerly Mary Ann Lyons, and mother of the

[Tioga County v. South Creek Township.]

pauper, there is no difficulty in this branch of the case. The evidence of Esquire Stockwell is very decisive upon the question of duress. Besides this, Mary Ann Ketcham admits subsequent cohabitation. Without therefore deciding that the evidence of the mother and alleged father is not competent to prove an illegal marriage, we are of the opinion that the evidence taken altogether discloses a legal marriage and we so find.

"But conceding this point, the defendant still insists that Francis is not the son of Amos Hoagland, but that he was actually begotten by her employer. If we were at liberty to consider the evidence of Amos Hoagland and Mary Ann Ketcham upon this point, we should be compelled to find the fact as alleged by Tioga County.

"The case turns in our judgment upon the competency of this evidence. It has been settled long ago that neither the mother or father of a child born in lawful wedlock, but begotten before, is competent to prove that the child was not begotten by the man who became the husband of the mother before the birth of the child: Dennison v. Page, 5 Casey 420, and the authorities there cited.

"But the defendant says this rule of evidence has been changed by the Act of 15th April 1869, which declares 'that no interest nor policy of the law shall exclude a party or person from being a witness in any civil proceeding.' This rule, which forbids the wife or husband from proving non-access, is said in some cases to be founded upon public policy, in others upon decency, morality and policy. The same reason is not always given for the rule; but it is said by the court in Dennison v. Page, that 'whatever may be the reason of the rule, whether good, bad or indifferent, the rule itself is an inflexible one.' We are not prepared to say that this old and well-established rule of evidence has been abrogated by one Act of Assembly. The question is a new one and not without difficulty; but we are inclined to the opinion that the Act of 1869 was designed to cover a class of cases different from the one under consideration. Having reached the conclusion that this evidence must be excluded, it follows that Francis, the pauper, must be adjudged to be the son of Amos Hoagland, who has a settlement in Tioga county. Order of removal affirmed."

Tioga County took out a writ of error, and in a number of specifications assigned the opinion and the decree of the court for error.

J. B. Niles (with whom was H. B. Packer), for plaintiff in error.—Marriage procured by fraud or force is void ab initio: 2 Kent's Com. 76; 2 Parsons Contr. 81, 319. Duress may exist by a threat: Chitty Contr. 193. Either husband or wife may testify in a collateral proceeding, although the evidence may tend to criminate or contradict the other, &c.: 1 Greenl. Ev., sect. 342;

[Tioga County *v.* South Creek Township]

1 Phillips Ev. 71; Fitch *v.* Hill, 11 Mass. R. 286; Griffin *v.* Brown, 2 Pick. 308. If non-access be proved the issue is illegitimate : Pendrell *v.* Pendrell, 2 Strange 925. A wife may prove her criminal intercourse with another than her husband : Commonwealth *v.* Shepherd, 6 Binn. 283; Commonwealth *v.* Stricker, 1 Brown 47 (Ap.); Commonwealth *v.* Connelly, 1 Id. 283; Commonwealth *v.* Wentz, 1 Ashmead 269; 1 Whart. Crim. L. 769. The Act of April 15th 1869, sect. 1, Pamph. L. 30, 1 Br. Purd. 624, pl. 16, makes the wife a competent witness.

*H. N. Williams* (with whom was *W. H. Carnochan*), for defendant in error.—The first order of removal was conclusive as to the settlement of the pauper : Sugar Loaf Overseers *v.* Schuylkill Co. Directors, 8 Wright 481; Sugar Creek *v.* Washington, 12 P. F. Smith 479. Marriage does not require a particular form of solemnization : Commonwealth *v.* Stump, 3 P. F. Smith 132; Barnett *v.* Kimmell, 11 Casey 13; Jackson *v.* Winner, 7 Wendell 47. Husband nor wife can testify as to non-access : Dennison *v.* Page, 5 Casey 420; 1 Black. Com. 456, note 21. The exclusion is on account of public policy : 1 Greenl. Ev., sect. 344. The policy referred to in the Act of 1869 is not the policy which relates to maintaining decency and morality.

The opinion of the court was delivered, March 23d 1874, by

GORDON, J.—This case might well have been decided on the ground that the order of removal of 16th December 1871, never having been appealed from, was final and conclusive as to the settlement of the pauper. That order was well executed by his delivery to the Commissioners of Tioga county, though directed to the Overseers of Covington township, because the commissioners represented the several poor districts of that county. Instead of returning the pauper to South Creek township, they should have appealed to the next Court of Quarter Sessions. Not having done so, the order became conclusive and amounted to a final adjudication : Sugar Creek *v.* Washington, 12 P. F. Smith 479.

It was, however, properly decided in the court below upon the evidence. The determination of the case depended upon the question of the admissibility of the testimony of the parents to bastardize their child born to them after wedlock. Exclude this, and nothing is left to controvert the fact that the settlement of the pauper was in Covington township, for that was the settlement of his father, and there is no evidence whatever going to show that he had gained a new one for himself.

That issue born in wedlock, though begotten before, is presumptively legitimate is an axiom of law so well established, that to cite authorities in support of it, would be a mere waste of time. So the rule that the parents will not be permitted to prove non-access

[Tioga County *v.* South Creek Township.]

for the purpose of bastardizing such issue, is just as well settled. Many reasons have been given for this rule. Prominent among them is the idea that the admission of such testimony would be unseemly and scandalous, and this not so much from the fact, that it reveals immoral conduct upon part of the parents, as because of the effect it may have upon the child, who is in no fault, but who must nevertheless be the chief sufferer thereby. That the parents should be permitted to bastardize the child, is a proposition which shocks our sense of right and decency, and hence the rule of law which forbids it.

But the counsel for the appellant insists that the case is within the purview of the Act of 1869. The language of that act at first blush might seem to include a case of this kind. "*No interest or policy of law* shall exclude a party or person from being a witness in any civil proceeding." The words we have italicized are those relied upon to support the appellant's theory. But when we come to consider the fact that "*the interest or policy of law*" which the legislature had in view in passing that act, was that which, before that time, excluded parties from testifying in their own suits, or where they had an interest in the subject-matter in controversy, it becomes obvious that a case, such as the one under discussion, was not in the legislative mind when that act was passed. It would, therefore, be an unnecessary and violent construction of the statute to make it include a "policy of law" wholly different from that under contemplation when it was framed. We therefore, without hesitation, adopt the view taken of this question by the learned judge of the Court of Quarter Sessions, and agree with him that the Act of 1869 was not intended to abolish a valuable rule of law founded in good morals and public decency.

The testimony of Amos Hoagland, the father of the pauper, to establish duress in his marriage was properly disregarded. He was thoroughly contradicted by all the witnesses who were present at the ceremony, and it would have been gross error to have treated the marriage as void upon evidence so unreliable.

Finding no error in the ruling of the court below, the judgment is affirmed.