## Janes's Estate.  McDonald's Appeal.

*Evidence—Illegitimates—Non-access—Husband and wife.*

While a husband and wife are incompetent witnesses to prove the fact of non-access while they lived together, they are competent to testify in cases between third parties as to the time of their own marriage, the time of a child's birth, and any other independent facts affecting the question of legitimacy.

*Presumption—Putative father.*

There is no presumption that the man who marries the mother of a bas-tard child is the father of it.

Argued April 20, 1891.   Appeal, No. 296, Jan. T., 1891, by Daniel McDonald et al., from decree of O. C. Clearfield Co., distributing estate of Mary Janes, deceased.   Before Paxson, C. J., Sterrett, Williams, McCollum and Mitchell, JJ.

Audit of account of S. H. Witherow, administrator of Mary Janes, deceased.

Krebs, J., filed the following opinion :

" The fund in court for distribution at this time goes to the heirs at law of John McDonald, who was a brother of Mary Janes, deceased.   [The testimony filed in the estate shows that

John McDonald died, leaving to survive him four children, namely, Janet McDonald, Daniel McDonald, Marion McDonald and Bruce McDonald.] The evidence discloses that Janet married William Bain; that she and her husband are dead, and that they left children to survive them. Under the disclosure made by the testimony it was deemed but just and right that further effort should be made by the court to ascertain how many of these children were living, if any, so that their mother's share of the fund might be distributed to them. Some effort was made in this direction after the distribution made under the order filed April 18, 1889, but no report or return was ever made to the court in relation thereto. It is highly probable that some of these children are living, or if dead have left heirs to survive them, who are entitled to their mother's or grandmother's share of the fund, which is the one fourth of the amount yet in court. But the court has done all it could to discover these facts and can go no farther.

" [The other question raised in the matter of distribution is the right of Bruce McDonald to receive the one fourth part of the moneys distributable to the heirs of John McDonald. His legitimacy is brought in question. That he was recognized as a child by John McDonald cannot be doubted after a perusal of the testimony.] [2] [His brothers and sisters are not competent witnesses under either the Scotch or English law to question the legitimacy or to prove it. The only testimony was that of his mother, a woman who, under the facts before us, was at the time of her testimony over 95 years of age. Her testimony, if it is taken as true and can be considered, would show that he is illegitimate, but we are advised and believe it to be the law that a father cannot testify so as to make illegitimate his child, and if this is the law in England and Scotland we do not think a mother should be permitted to do so either.] [3]

" [It is proper to say that through information given by reputable counsel, representing the widow of Bruce McDonald, namely, Robert J. Porter, Solicitor, Belfast, to Henry F. Walton, of Philadelphia, under date of 24th May, 1889, and through Mr. Walton to S. V. V. Wilson, Esq., of this court, the court directed a commission to be filed to show the facts, whether true or not, as to the mental condition of this aged woman, who is the only witness called to testify as to the illegitimacy of Bruce

McDonald and thereby bastardize her own issue. Whether or not a commission for the purpose did issue the record does not show,] [4] but a commission for some purpose issued in January or February, 1890, to George W. Savage, U. S. Consul at Belfast or Glasgow, but no testimony was taken thereunder, because of the absence of the commissioner at that time in the United States. In order to show the reasonableness of the grounds upon which the court ordered these commissions to issue, both as to the mental and testifying capacity of the principal witness on the question of the legitimacy of Bruce McDonald, and also as to the existence of heirs entitled to take the interest of Janet McDonald, we refer to the testimony of record and the letters hereto attached.

[" The presumption of law is in favor of the legitimacy of the claimant, Bruce McDonald, and has not been overcome by competent testimony, and I award to his widow and children the one fourth part of the moneys that descends to the heirs of John McDonald." ] [5]

" Whatever of delay there may seem to have been in this case arises from the questions above stated and the desire to place the money to those justly, legally and equitably entitled thereto.

[" It is therefore adjudged, ordered and decreed that the one fourth part of all the moneys yet in court for distribution, including those covered by the order of August 30, 1889, be paid to the representatives of Bruce McDonald upon proper power of attorney being filed, and that the remaining three fourths be paid to the representatives of Daniel McDonald and Marion McDonald and Janet Bain, nee McDonald, upon proper power of attorney being filed." ] [6]

*Errors assigned* were (1–6) the portions of the opinion as above.

*Thomas H. Murray, A. A. Adams* and *Cyrus Gordon* with him, for appellee, cited Reeve's Domestic Relations, 272; Starkie on Evidence, part 4, 224: Cook v. Lloyd, Ped. Ev. Ap. 38; Meurer v. Meurer, 119 Pa. 115; Hemmenway v. Towner, 1 Allen, 209; Phillips v. Allen, 2 Allen, 453; Dennison v. Page, 29 Pa. 420; Tioga Co. v. South Creek Twp., 75 Pa. 433;

Smith v. Derr's Admr., 34 Pa. 126; McGunnigle v. McKee, 77 Pa. 81; Killam v. Killam, 39 Pa. 120.

*S. V. Wilson* and *J. B. McEnally*, for appellee, presented no paper book and were not heard by the court.

OPINION BY MR. JUSTICE McCOLLUM, March 21, 1892.

The single question presented by this appeal is whether Bruce McDonald, to whose widow and children a portion of the fund for distribution was awarded, was the legitimate son of John McDonald, who was a brother of the decedent. It is a question of fact to be answered on the evidence. It was conceded by the learned judge of the court below that a negative answer must be returned if the deposition of the mother can be considered in solving it. He thought, however, that this deposition was incompetent, and he refused to allow it any influence in the decision of the question, on the ground that a mother cannot, by her own evidence, bastardize her issue. A presumption of legitimacy attaches to birth in wedlock, and it cannot be rebutted by the testimony of the mother or of her husband. It may be overcome by proof of non-access of the husband, but they are not competent to establish it. The proof must come from another source. But the mother is competent to prove the fact and time of her marriage, and when her child was born. The rule on this subject is thus stated in Greenleaf on Ev., vol. 2, § 151: "The husband and wife are alike incompetent witnesses to prove the fact of non-access while they lived together. But they are competent to testify in cases between third parties as to the time of their own marriage, the time of the child's birth, the fact of access, and any other independent facts affecting the question of legitimacy." In Taylor on Ev. 817, the learned author, referring to the same subject, says: "But this rule does not prevent the parents from proving that the supposed marriage was either invalid or valid, or that their children were born before or after its celebration, though the effect of such evidence is, in the first and third case, to bastardize the issue, and in the others to establish its legitimacy. For this purpose, too, their declarations, or their old answers in chancery, are admissible evidence." An examination of the decisions on the point under consideration discloses the fact that they are in entire accord with the rule as above stated.

Among our own cases, in which it is distinctly recognized and applied, are Dennison v. Page, 29 Pa. 420 ; Kleinert v. Ehlers, 38 Pa. 439, and Tioga County v. South Creek Township, 75 Pa. 433. A child born or begotten in wedlock is presumed to be legitimate, and neither the mother nor her husband can bastardize it by testifying to non-access. It seems, however, that if there is competent evidence which tends strongly to prove that the husband had no sexual intercourse with the wife at the period of conception, their acts and declarations, at the birth of the child and subsequently, may be received as corroborative of it : Dennison v. Page, supra, and cases cited. In Commonwealth v. Shepherd, 6 Binney, 283, which was a prosecution for fornication and bastardy, a married woman was permitted to testify that the defendant had criminal intercourse with her, and was the father of her child, born in wedlock, there being sufficient evidence to show non-access of the husband at the time it was begotten. We think it is clear, in the light of the authorities, that the deposition of Bruce McDonald's mother was competent, and should have been received and considered in the decision of the case. From it we learn that she was married to John McDonald on June 11, 1824, at Tullyallan Kincardine-on-Forth, by Andrew Bulloch, minister of the parish; that soon thereafter they removed to Falkirk, where they resided until his death, in May, 1874; that Bruce was born "eleven or twelve years" before her marriage, and that his father's name was Docherty. As to her marriage, she is corroborated by the certificate of the session's clerk of Tullyallan parish, and by the certificate of the minister ; as to the time of their removal to Falkirk, by the testimony of disinterested witnesses, who knew and lived near to them during their residence of fifty years there ; as to the time when Bruce was born, by witnesses who knew him well, and testified to his age, and as to his paternity, by the evidence of her own and John McDonald's declarations, and the reputation in the family and neighborhood, concerning it. In answer to all this testimony, we have the unsupported and bald assertion of the appellee, who is the daughter of Bruce McDonald, that her father was a legitimate son of John McDonald. It is not sufficient to prevail against the direct proof and its corroborations to the contrary. As Bruce McDonald was born before the marriage of

his mother, he was a bastard. It may be that the subsequent marriage of his putative father to his mother would have legitimated him, under the laws of Scotland. But there is no proof that John McDonald was his father, and there is no presumption that the man who marries the mother of a bastard child is the father of it. It is provided by our act of May 14, 1857, P. L. 507, that " where the father and mother of an illegitimate child or children shall enter into the bonds of lawful wedlock and cohabit, such child or children shall thereby become legitimated," and this is substantially in accord with the Scotch law, and with enactments elsewhere, which have for their object the legitimation of bastards by the subsequent marriage of their parents. It is clearly and satisfactorily shown by competent evidence that Bruce McDonald was an illegitimate son of one Docherty, and we are not aware of any law which invested him with the rights of a legitimate son and heir of John McDonald. It follows from what has been said, that the learned judge erred in awarding to his representatives one fourth of the sum to which the heirs of John McDonald were entitled. It belonged to the parties to whom the remaining three fourths of it were awarded.

⌐ Decree reversed at the costs of the appellee, and it is ordered that the record be remitted to the court below, with directions to enter a decree in accordance with this opinion.